We will hear argument this morning in Case 22-982, Thornell v. Jones. Mr. Lewis. Thank you, Mr. Chief Justice, and may it please the Court. The Ninth Circuit erred in two critical ways. First, it failed to give any deference to the District Court's factual determinations. After hearing the evidence and testimony at the evidentiary hearing, the District Court made factual findings as to whether Jones suffered from specific mental conditions and whether those conditions caused him to murder Robert and Tisha Weaver. The Ninth Circuit disregarded those findings, instead substituting its own judgment. My friend defends this error by positing that the District Court's only role was to determine whether unprecedented mitigation evidence existed. This view eviscerates the traditional role of trial courts in the fact-finding process and would radically change habeas practice, resulting in far more writs undoing state sentences. The Ninth Circuit further erred by failing to meaningfully consider the aggravating evidence or its weight. Strickland does not allow for a sentence to be undone whenever there is some new mitigation that addresses moral culpability. Instead, it requires a reasonable probability that the new mitigation would have to change the sentence in light of the balance between the total mitigation and the aggravating evidence. The Ninth Circuit's approach is contrary to this long-standing test and must be rejected. I urge this Court to reverse the Ninth Circuit's judgment, clarify the applicability of clear error review in the Strickland context, and reaffirm the principle that a Strickland prejudice determination requires a reviewing court to reweigh both the total mitigation and the aggravation. I welcome the Court's questions. Can we resolve this simply by saying that de novo review is improper? I think so, Your Honor. Your Honor, you know, in my friend's responsive brief, he argues that Village Lakeside stands for the proposition that these types of mixed questions addressing constitutional issues are totally de novo. I think there's more room in the Strickland question than that, and specifically in the Strickland prejudice context. I'm sorry. I don't think I understand your answer. There's no dispute that the Court below did not, I'm not talking the Federal Court, the State Court never reached the prejudice prong, correct? We haven't raised that issue, Your Honor, no. No, and you're not raising it now? No, Your Honor. You're accepting that de novo review with respect to the prejudice prong is correct, at least for purposes of this argument? De novo review is correct as to the legal determination on the mixed question, yes, Your Honor. All right. So that, I think, was the question being asked. So that it's not epideference that you're seeking? No, Your Honor. Yes, okay. Just to clarify, you're saying that there's de novo review in the district court, not de novo review on appeal? There's de novo review of the district courts. The district court made a prejudice determination, and we haven't raised the question of whether the State court made a prejudice determination. And that judgment was entitled to deference under AEDPA. So the district court made a prejudice determination. Right. We're asserting that that determination would be reviewed de novo as to the legal question in the Strickland inquiry. But on the factual question of the mixed question, then those factual determinations are entitled to clear air deference under Rule 52 in this Court's precedence. Assuming we accept your argument that the court below didn't weigh the aggravating and mitigating factors, you're asking us for a reversal. Why isn't the vacate and remand appropriate? I think concepts of finality would dictate that the circuit court has had this case for so long and has spent so much time granting relief on certain issues, reserving other ones, and then having it sent back continuously. It has to end at some point. That's nice, but we're not fact finders, and we generally don't weigh evidence. There's thousands of pages in this record. I'm still not quite sure why. I understand the basis of your argument. The circuit court did lay forth the fact that it should balance aggravating and mitigating, but I accept that it really didn't do that. It mentioned them but didn't compare them to the mitigating. That's the step you say is missing. Yes, Your Honor. And I accept that under Arizona law, the aggravating factors that it failed to weigh are usually given great weight under Arizona law. But that's still, I could accept that they didn't weigh them the way they're supposed to. Why are you asking us to do that? I think that that's something that isn't better practice for us to tell the court what it's supposed to do so it gets it right the next time? Yes, Your Honor, I think so, and I think that's what this court did in Wong v. Belmonte's. We've just asked for sort of this extra step because, in our view, the aggravating evidence is so compelling and the mitigating evidence that was developed in the federal evidentiary hearing is so slight. Well, really? I mean, let me just mention one, the head injuries. The original sentencing court knew of two or three head injuries. In none of them was there proof that the defendant had gone unconscious, as there was in the new evidence that was developed, that when I think he was, if the facts are close to this, if I don't get the details right, please forgive me. But you can correct me if I'm wrong, that at 5 years old, he fell, went unconscious. His mother found him just waking up. In another incident, he fell on his head on a metal roof and taken to the hospital and there was brain swelling. Don't you think that those facts are sufficiently more serious than what was presented at first and would have shown greater, for a fact finder reasonably to conclude, that there was neurological damage from this number of injuries? And types of injuries. Yes, Your Honor. I think the evidence concerning when Jones was 5 years old and fell off the swing and had lost consciousness, I believe that was introduced through Dr. Potts' testimony. And I believe that the 11-year-old incident came in through Dr. Potts as well, which was presented to the trial court, along with the evidence of Jones' having been passed out while he was in the military and sort of the report associated with that. I could be wrong, Your Honor. That was my understanding of the record. I think, assume my set of facts. I do know that some of the incidents were introduced at trial by Dr. Potts, but that the more serious ones were found on habeas review and after a more detailed mitigation examination by the experts. Sure. The ones showing his unconscious nature and the brain swelling. And so even assuming that those incidents happened and that that information was only introduced post-sentence, the district court's findings about the credibility of Jones' expert witnesses are compelling and entitled to deference because the head injury alone isn't really dispositive of anything. It just says that Jones fell and hit his head and he lost consciousness and there may have been some swelling in these things. But without the underlying expert opinions to explain why that affected Jones and why that affected his conduct at the time of the crimes, it's not as compelling of mitigation as it would be otherwise. Can I say something? Sure. If a judge or district court were to say, I will only consider mitigating evidence if it is confirmed by 1,000 scientists beyond a reasonable doubt. I don't think that's... And then says, I'm not going to consider it. Sure. Even if you credit it, you could come back and say the aggravators still outweigh the mitigators, correct? Correct, Judge. But if a judge were to make that error, would that be a legal error? I think so because it wouldn't reflect the actual sentencing process where the sentencer has to have the ability to consider any relevant mitigating evidence. All right. So I read the circuit court here as saying that's what the district court did or how it erred, not in ignoring the credibility determinations, et cetera, but in requiring more proof than the law required. Even under Arizona law, for example, it says you don't need to prove a nexus between the injury and the crime. That's what I have tenor T-E-N-N-A-R-D. It's an Arizona case that says you don't need to prove that connection. Right. All right. So what I read the Ninth Circuit as saying is the court applied the wrong standard. It might want to give it less weight in the calculus, but that's not what it did. It set a legal standard that said you had to show conclusively that it was present. I don't think the district court ever purported to say that it was refusing to consider any of this evidence for what it was worth. What we had here... What it said is Jones did not present, quote, evidence confirming that he suffers from neurological damage caused by head trauma or other factors. I don't see how that's not requiring positive proof. I think you can split it up. So the district court, when it was faced with conflicting experts on specified diagnoses, said I have to figure out what's true and what's not true. Except that's not what we've said in Porter. I'm sort of picking up on Justice Sotomayor's point here. This court appears to have looked at a similar situation and said, I'm talking about the Porter case, even though the state's experts identified problems with the defendant's expert testimony, it was not reasonable for the court, the district court, to discount entirely the effect that this testimony might have had on the jury and the sentencing judge. So I take that to mean that the responsibility or the role of the district court is to see that there's mitigating evidence there and in the ultimate weighing, perhaps, take into account whether the district court thinks something is more or less credible as it weighs it against the aggravating evidence. But to discount it, to say I'm not going to look at it because you haven't proven or whatever, seems like a problem with the district court's analysis. Sure. So two points about that. If I'm remembering Porter correctly, I think what you had there wasn't the same sort of battle of experts that you had here because in Porter, the state's experts said that they couldn't agree on whether or not it would establish this sort of statutory mitigating circumstance. So I think it's much different when you have experts that are saying categorically, no, Jones does not suffer from cognitive impairment or PTSD, and the district court is forced to decide which account of Jones' mental condition is more accurate. But I guess what you're asking us here to say that the court of appeals erred in recognizing what could be a problem with the district court's analysis, that the court of appeals had to defer to these credibility findings under circumstances in which it isn't clear that the district court was supposed to be making this kind of finding. So it feels like one step more you want us to establish here. Sure. And, you know, I would just point out, Your Honor, that the district court still considered the evidence establishing the foundation of all of these specified diagnoses. For instance, the district court considered the impact of Jones' alleged further physical and sexual abuse, but the district court didn't give it very much weight because as the district court saw it, Jones wasn't a credible reporter for that history. I'm sorry. Go ahead. Just especially in light of the trial court's finding that Jones had manufactured the tale about this third-party culpability theory and presented it to the jury. I mean, isn't it possible that the district court misunderstood its role here? And this doesn't at all go to the question of whether the court of appeals might have also misunderstood its role. But just focusing on the district court for a moment, that the district court seems to think that it was the fact finder in this case. And using a kind of preponderance of the evidence standard, did you show this? Did you show that, you know, by 51 percent? But I don't think that that's what the reasonable probability asks a district court to do. I mean, if you were just to put some artificial numbers on this, suppose that there was enough evidence and mitigation that a court could say something like, I don't know, there's like a 30 percent chance that this might have affected the way the original sentencer would have decided. Now, a 30 percent chance is not a 51 percent chance. So if I'm the fact finder, I find you haven't met your burden. But as I understand what we've asked district courts to do in this special Strickland area, it's basically to ask a different kind of question, which does not give you a 51 percent threshold. It just says, you know, if there's some kind of chance, it might be 30 percent or it might be 25 percent or whatever it is, that the district court, that the original sentencer would have done something differently, then I'm supposed to give it back to the original sentencer. So that's where I think it looks to me as though the district court misunderstood its role, and I'm wondering what the answer to that is. I mean, it's possible, I suppose, Your Honor, that, you know, these are trial courts, and they're used to settling disputes between conflicting evidence. Completely. It seems like a very natural thing for the district court to have done. I'm a fact finder. I'm going to say you're credible, you're not. You've met your 51 percent burden, you haven't. But this is a special context where we actually have said that that's not the right inquiry. And, you know, I think the district court was doing things that were still proper even under this view. It's just that those things would happen in the weighing of the prejudice determinants. Mr. Lewis, have we ever said that it's enough to show there's some kind of chance? No, Your Honor. Did the district court ever say that it was applying a preponderance of the evidence standard? No, Your Honor. Is it a reasonable understanding of their opinion to think that it was doing fact finding in the normal way? I think it was reasonable to assume from the opinion that the district court, when confronted with the conflicting evidence on specified diagnoses, did what it had to do to separate truth from fiction. Counsel, can I ask you about the evidentiary hearing in the first place? I've been trying to figure out, because this case has a long procedural history, and the state isn't challenging this, I understand, but I just want to understand the rationale for it. Do you think the district court was right to conduct an evidentiary hearing and take in the extra evidence? Because 2254E2 requires the court to find two things before the new evidence is taken in, and one is the factual predicate that could not have been previously discovered through the exercise of due diligence, and that was what the Ninth Circuit found, and B, the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. How did that figure into the conducting of the evidentiary hearing? I mean, maybe it was right. Like I say, the procedural history of this is complicated. Was that correct? And if it wasn't, why isn't the state challenging that? Well, this was a pre-pinholster evidentiary hearing, so I believe the hearing was granted in 2003 thereabouts, if I'm remembering correctly. I can't give the reasons for why the state didn't more vehemently oppose the hearing. Well, was it proper to have the evidentiary hearing? I think probably not, Your Honor, but we live in this sort of post-Ramirez world where we expect people to exhaust their claims and develop their records in state court before those claims can be considered in federal court and without the benefit of any new evidence that wasn't put before the state court. So I think where we are now, we would clearly say this is improper, but at the time when the court granted the hearing in 2003, you know, it's hard to say. I appreciate the question, though. Can I direct your attention to the second alleged problem with the court of appeals? You said that they failed to meaningfully consider the aggregating evidence and its weight, and I'm just trying to understand that argument in light of what they actually did. I see them as listing three aggravating factors, as saying the correct standard. I think you agree that the standard is that they say on de novo review we must weigh these factors against the mitigating evidence developed in the state record that was available but not presented. Is that the right standard? Yes. All right. And then they say reweighing the evidence in aggravation against the totality of the mitigating evidence, they conclude that the mitigating evidence outweighs, but the important part, I think, is that they go on to say this conclusion is supported by the Strickland prejudice analysis conducted by the Supreme Court and our court in similar cases. And then they go through case after case after case, identifying an aggravating factor that is similar to the one in this case and explaining how in that case the court, whether it's this court or another court, found it to be outweighed by similar mitigating evidence. So why is that not a kind of weighing analysis that is proper in this circumstance? Well, first, you know, there's no ascription by the circuit court of any type of weight to the aggravating circumstances. So what we have here is the district court making the first de novo review of the prejudice question. It wasn't made in state court. We haven't raised that here. The district court's the first one to make it, and the district court ascribes great weight to the aggravating circumstances present here. The Ninth Circuit doesn't rebut that at all, and they don't make any comment on the actual weight of those aggravating circumstances to give some context for how it's actually being weighed. So you're saying they have to speak direct? Because what I see them as doing here is rebutting that in the context of its review of other cases that have talked about similar aggravating factors and have done the weighing. I mean, I'm totally with you if they hadn't done that, right? But it looks like they've gone through and they've said, okay, let's find other cases where similar aggravating factors have been present and mitigating factors were not presented, and what did the court say in those situations? And this one is similar. I guess you're saying that the error here is that they had to have an additional paragraph in which they directly said, and so the district court got it wrong? You know, I think that's possible because that's the last thing we have in the record that actually ascribes any sort of weight to the aggravating circumstances. And if you read Judge Bennett's dissent, you see what we would be looking for in that type of situation. In a lot of the cases that my friend cites, you know, we were dealing with ed per view of a state court determination. And when you think about Williams v. Taylor, you know, this court is saying that the state court correctly emphasized the strength of the prosecution evidence supporting the future dangerousness to aggravating circumstance. Even a sentence like that shows that the court has assigned some weight to an aggravating circumstance and considered it in some way, but we don't have that here. We just have a bare recitation that aggravating circumstances were found, that they existed, but the court focused solely on the weight of the new mitigating evidence, and I think that demonstrates that they didn't consider what Strickland calls for them to consider, which is the balance between the total mitigation and the aggravation. Counsel, you mentioned, I think, in your opening, if I'm remembering correctly, that one thing we should do today is clarify the legal standards that are applicable. What do you want us to say that we haven't said already? You know, I do think that this court in Strickland was clear that, you know, there is a factual component to this inquiry and that the legal questions are whether there was deficient performance and whether there was prejudice from such deficient performance. But I think there's a little room within those legal determinations for factual findings that are entitled to deference. These prejudice determinations are so fact-intensive because your reviewing courts are required to engage with the circumstances of the crime, with life history details, and to figure out how those would be weighed and resolve the issue. So I think when the district court makes those types of weighing determinations with the benefit of seeing live testimony, the demeanor of how people are presenting their opinions, all these things that trial courts are so well-situated to do makes them a good fact-finder in this context, even when you're within the legal question of prejudice, for instance, that I think deference is appropriate. And it would be helpful to any courts conducting these types of reviews to understand how far that deference to their factual determination extends. So to be clear, you would say that underlying facts like the head injury, for example, would be entitled to clear error deference by the Court of Appeals? I think so, Your Honor. And that it's only the prejudice weighing, the weighing of the mitigating and the prejudicial evidence that gets de novo review in the Court of Appeals? I think that's right, because there the district court is applying the legal test that this court gave in Strickland for finding prejudice, and so that would be naturally subject to de novo review. And so just to connect it back to some of the questions Justice Kagan was asking you, you're saying that for the underlying fact, like, for example, the head injury, a preponderance standard would apply, but that the Strickland standard, the special Strickland standard, sorry, applies at the weighing only? I'm not sure. I don't think we've really briefed what burden would apply to establish these facts. You know, in a traditional mitigating, you know, in a penalty phase hearing in a trial court, in Arizona at least capital defendants are required to prove their evidence by a preponderance of the evidence. But even if it's under a reasonable probability standard, that is whether there's a reasonable probability that a sentencer would find it compelling in the weighing, that's still a burden that they have to meet, and the district court or trial court's determination in that regard would be entitled to deference. Mr. Lewis, I agree with you entirely that the circuit court is supposed to treat the district, should treat the district court's evaluations of these kinds of claims with great care. The district court is the one that sat there through all the evidence. The district court presumably knows the record a lot better than the circuit court does. So I'm full square with you on that. But when you start talking about sort of clear error review of fact finding, that's when I see a real switch in the way we do the, in the way we understand the Strickland inquiry. Because that would suggest to district courts that their job in this proceeding, may I finish? Yes, sure. Is to say, was there a head injury, was there not a head injury? Did he have PTSD? Did he not have PTSD? Which is, of course, the usual thing that district courts do, but not the usual thing that we've asked them to do in this context. I mean, I see the point, Your Honor. I just think that there is room for these types of factual determinations. And because the district court is so well situated to make those determinations, that they should be entitled to deference. Justice Thomas? Justice Alito? Mr. Lewis, the question of prejudice is a mixed question, right? Yes, Your Honor. All right. What's the legal component and what is the factual component? The legal component is whether there's a reasonable probability that, in consideration of the total mitigation and the aggravating evidence, the sentence would have changed. You think that whether there's a reasonable probability is a question of law? I think that's the standard that Strickland formulated. Probability is a question of law? If I flip a coin, what's the probability that it's going to be heads? 50-50, Your Honor. Is that a legal question? No, Your Honor. Is that a factual question? Yes, Your Honor. Somebody jumps out of a third-story window, what is the probability that the person is going to die? Is that a factual question? Perhaps an actuary and a doctor could formulate some probability to guess that. Give me a situation in which probability is anything other than a factual question. Right, Your Honor. Then why are you saying that whether there's a reasonable probability is a legal question? There's a legal part of the prejudice inquiry. It's what is the standard? The standard is reasonable probability. If the district court says, no, it's any minor probability, that's wrong. If the district court says it's beyond a reasonable doubt, that's wrong. But that's the legal part. Then the factual part is applying that to the facts of the case. Was there a reasonable probability? Are you with me so far? Yes, Your Honor. Thank you. Thank you, Judge. Justice Sotomayor? The district court never said that this defendant never experienced those head injuries. He just said he didn't believe that they were tied to the crime, correct? I think in some regards because you had all these other injuries that were being reported. But he never said he disbelieved the reporting of the mother that the defendant had at five years old. Not as to the five-year-old incident. And not to any of it. All right. Justice Barrett asked you about 2254E2. I think Cullen itself said that when there's de novo review of an issue presented to the state court that it never reached, that a fact-finding was appropriate in habeas. That might be the reason why the state didn't fight the fact-finding. Your Honor, I didn't come prepared to answer those questions. I apologize. But Cullen, I will say Cullen at 185 says that. Thank you, Your Honor. As you know, I dissented there, so I know that decision well. Thank you, Your Honor. Justice Kagan? Justice Gorsuch? I just want to see if I understand where the ball has bounced this morning. Sure, Your Honor. So one could view reasonable probability as your colloquy with Justice Alito suggested as a factual inquiry, right? Sure, Your Honor. Or one could, I think, as you've suggested otherwise in response to other questions, suggest that it has both a factual and a legal component. And in order to assess whether a jury or a judge at sentencing would have changed its mind, you first need to know what the facts are that would be relevant to that inquiry. Call it legal. Call it factual. And somebody has to decide what those facts are. Yes, Your Honor. Was he hit on the head how many times? Did it change his cognitive abilities at the time of the crime? Those are all facts that somebody needs to find. Is that your point? Yes, Your Honor. And that's what we've advocated for in this case through the briefing, is that the district court was faced with diametrically conflicting evidence. Jones has PTSD. Jones does not have PTSD. And the district court had to determine what was true and what was not true before it can move on to the legal question. Thank you. Mrs. Jackson? So I guess where I'm getting a little confused about all of this is that I thought that the standard at issue, as you articulated it in response to Justice Alito, was whether in consideration of the total mitigating evidence, there's a reasonable probability that the outcome would have been different. Is that right? So as Strickland terms it, it's a reasonable probability that the sentence would have been different in consideration of the total mitigation weighed against the aggravating circumstances. Perfect. All right. I agree. I think what Justice Kagan is saying is that that standard takes into account for the purpose of its application that all of the mitigating evidence is being presented, that we present this mitigating evidence, we present this aggravating evidence, and would, if all of that had happened, is there a reasonable probability that the outcome would be different? I think the problem that's happening here is that the district court, being a district court, is screening the mitigating evidence up front. There's sort of like another layer being added to this on the front end where the district court, as you said in response to Justice Gorsuch, is deciding, well, is this really mitigating evidence? Is this a fact? Did this thing happen? And it's sort of putting that initial screen on it so that when we get to the Strickland weighing, we have a smaller corpus of mitigating evidence because we've already weeded out the stuff that the district court. I think that's not what's supposed to be happening, actually. I think that whether or not this thing is actually a fact is determined ultimately, that at this level right now, the district court is just deciding whether or not this basically has to go back to the states, whether the person gets habeas and it's got to be done over again in some sense. And later is where we find out whether or not the thing is really true. But in the context of Strickland prejudice, we're just saying this fact was never presented at all. And the question is, to what extent was the defendant prejudiced by that omission? So we're not screening up front for whether or not that fact was true in any sense. We're sort of accepting it and saying, well, in any event, the defendant might not even be prejudiced because it was such a thing, right, that it doesn't outweigh the aggravators. So we're not going to send it back. So I think the problem with your analysis is it has, and the district court's analysis in this case, is it has the district court doing something that actually doesn't fit in this Strickland dynamic. Does that make sense? I see your point, Your Honor. That's not the argument that we've made. And I think even under your point, even if it was improper for the district court to screen the things in the manner that the point says that they do, I think that those determinations are still properly made in the weighing. When you look at a case like Belmonte's and the court is talking about how what reviewing courts need to consider is the interaction between this evidence, how it changes the entire evidentiary picture, where the district court is saying things like Jones's experts are not credible for X, Y, and Z reasons, then even under this view, those considerations become relevant in the weighing. Thank you. Thank you, counsel. Mr. Andre. Mr. Chief Justice, and may it please the Court. The issue in this case is whether Mr. Jones was prejudiced at his capital sentencing hearing by the conceitedly deficient performance of his counsel. Counsel had only been a lawyer for three and a half years and never as lead capital counsel. Despite numerous red flags about Jones's mental health and emotional disorders, counsel did not start his mitigation investigation until after Jones's conviction, and all he did was request an Arizona Rule 26.5 evaluator. The result was that the sentencing judge heard only about Jones's complicated birth, abuse by his first stepfather up until age six, some head injuries, and from the Rule 26.5 evaluator that Jones had some, quote, possible neurological abnormalities, and that was because the evaluator did not have the time and it would be beyond his charge to make actual diagnoses. At the federal evidentiary hearing in this case, of course, Mr. Jones introduced substantial new mitigation evidence that the sentencing judge had never heard. The new mitigating evidence showed that Jones was chronically abused throughout his entire formative years in childhood, well beyond age six, by not just one but by multiple male family members. He was plied with alcohol by a step-grandfather who then sexually abused him, and most critically, the new mitigation evidence actually included diagnoses, evidence about the effects that all the abuse and head injuries had on Jones. These included the opinions of four experts who diagnosed him with, among other things, brain damage, PTSD, bipolar depressive disorder, and a learning disability. All this new evidence would have dramatically changed the sentencing calculus both in the trial court and before the Arizona Supreme Court on its independent review. But instead of looking at the sum total of all the evidence and asking whether it established a reasonable probability that the Arizona court system might have imposed a different sentence, the district court serially nitpicked all of Jones' mitigating evidence and then offered its view of what it thought the more persuasive side was. That was error. The Ninth Circuit properly corrected it, and this court should affirm. If this court has questions, I welcome them. It seems the district court did not say, at least from my reading, that this evidence was as significant as you say it is. Otherwise, it would have found prejudice, right? Well, the district court, I think in the most recent colloquy between Justice Jackson and Mr. Lewis, I think the district court did exactly what Justice Jackson described, which was the district court here went through and said, okay, here's this disputed fact. I'm going to resolve it 51-49, 60-40, whatever I view of it. And then because Jones loses on that point, it doesn't get considered with respect to strickling prejudice. And so to answer, I guess, your question more directly, yes, the district court thought the state should win here. But the problem is that, and I understand this, district courts sentence federal defendants all the time and are called on to make findings that then are subject to clear error review, right? Vulnerable victim, loss calculations, which, you know, white-collar defendants, financial loss expert is more credible. That's not this context. This is a context where the district court is supposed to collect all this evidence and make its observations about how significant the evidence is, how weighty it is, but actually address strickling prejudice at the back end. And then when the appellate court looks at it, the only things to which clear error review would attach would be the kind of core factual findings that this court has said it should be making. Is the evidence new? Is it mitigating? Is it substantial? Was it available at the time? And then whatever other kind of screening mechanisms the district court wants. There's something else that the circuit court is supposed to do, which is the circuit court is supposed to weigh the mitigating evidence against the aggravating evidence. And here, you know, the circuit court once said that that was what it was doing, but then it completely ignores all the aggravating evidence, which was substantial in this case. So, you know, whatever one can say about what the district court did wrong, we're reviewing the circuit court opinion, and that opinion doesn't do what it's supposed to do. I will acknowledge, Justice Kagan, that that is the hardest part for me, at least my view of the Ninth Circuit opinion. I mean, the Ninth Circuit did go through over four pages and compare the facts of this case to the facts of other cases. But I take the point, and I forget which one of your honors mentioned it. Right, but it's comparing like, oh, in these other cases, the court had all this mitigating evidence, and here there's the same kind of mitigating evidence, and that means our job is done. But that's, you know, what we've said is that the circuit court has to look at the good and the bad. So the circuit court is supposed to look at the mitigating evidence, as well look at the rebuttal case that the state put on about the strength of that mitigating evidence, and then most crucially weigh it against the aggravating evidence. And that most crucial last stage, I mean, there were lots of aggravators in this case, and the circuit court doesn't even mention some of them. Well, so I'd like to push back on you respectfully. So the Ninth Circuit did three times separately acknowledge its obligation to do the reweighing. Then the Ninth Circuit twice didn't just cite but actually quoted the aggravating factors found by the trial court. And so that listed them. And they have, you know, brutal language built right into them. Then the court, you know, also didn't shy away from the underlying facts of these murders. It recounted them in detail in the beginning of the opinion, and then again in the section where it did engage in the comparison. Again, I acknowledge, this is — I wish the Ninth Circuit had said more on this particular part of its analysis, because it is the thinnest. But I think it's still enough. And what's notable also about this case, because, you know, you mentioned the additional bad evidence that may have come out. This is not a case like Wong v. Belmontis. In fact, Wong — I like that case quite a bit, because it's a great contrast for us. There is no new bad, unlike a new — an additional murder like we had in Wong. There is no new additional bad to be introduced in this case. The only rebuttal case the state had to what we presented at the federal evidentiary hearing were its competing views of our experts. And as, you know, we've been discussing, that ultimately — that ultimate credibility determination is best reserved for the state center. When you have competing experts, they're not doubtable, if I can make up that word. They're not loony tunes and subject to Rule 702. They go to the ultimate fact finder if it's a toxic tort case, or the ultimate sentencer if it's a criminal case. And so, again, here, there really isn't new bad to be weighed. There's just what was always in the case that was aggravating. And it's significant. I get that. Three murders. You know, this is a brutal case. But against this wealth of mitigation evidence, old and new, that we were able to put in between the various proceedings, and on balance, this case looks a lot like Williams v. Porter. Mr. Wood — Mr. Onda, can I ask you about what seems to be your lead argument? This is on page 14 of your brief, in the summary. Quote, if the defendant presents substantial evidence of the kind that a reasonable sentencer might deem relevant to the defendant's moral culpability, even despite powerful aggravation evidence, relief is warranted. Okay? So let's think of a case where the defendant is sort of like Hannibal Lecter. You've got a defendant who has kidnapped and hideously tortured 25 children and sent messages to the media saying, I love to kill, and I'll always kill if I have the chance. So you've got the most horrible aggravating evidence that you possibly can have. Then you say that all that's necessary in order to get resentenced is for the defendant to come up with evidence that a reasonable sentencer might deem relevant to the defendant's moral capability? That's your argument? I will acknowledge that is in the summary of argument section of the brief, not the argument section. I think our position is quite more nuanced. I mean, ultimately what it is is that the sum total of evidence, the good and the bad, is then compared against the guideposts that, whether you're the district court or you're the Ninth Circuit, the guideposts that those courts have. And those guideposts are this Court's Strickland precedents. Let me ask you about another legal argument that you make, and this is on page 15. A district court errors when its fact-finding assumes the role of state sentencer by disregarding the opinions of one party's experts based on the superior credibility of the other party's experts. All right, so let's think of a case where the state's expert is minimally qualified, is torn apart on cross-examination in the hearing before the district court. And then the defendant has, and let's say the issue is whether there's an organic brain damage. The defendant has the country's five leading experts on organic brain damage, and they all testify. You say, well, the court can't make a credibility determination? Or does it go just the other way? I mean, just go one way? No. The court can't say, I'm not going to give any real weight to this expert who has low qualifications, testimony was horrible, I don't believe him, he looked like a liar on the stand. And then all these other experts whose credentials are unimpeachable and their testimony was very impressive can't make a credibility determination? So I'd like to unpack that with a number of responses if I may, Justice Alito. First, I read the Ninth Circuit's use of credibility in that section of its opinion as a little imprecise. The Ninth Circuit acknowledged in its opinion that a district court remains free to make credibility determinations. Then in the next sentence, it said the trial court, the district court here, erred in determining which side's experts were more credible. Well, I'm not really talking here about what the Ninth Circuit said. I'm talking about what you said in your brief. Can the court make credibility determinations about experts, yes or no? Yes, and the district court here did not, and that's what I was trying to get at by explaining what the Ninth Circuit was saying. The district court didn't say that these experts are trying to sneak in junk science, that Andre was there on the stand and he was sweating bullets, it wouldn't let anybody look anybody in the eyes, and therefore I don't believe him. The district court effectively resolved this battle of the experts based on the transcript. To be sure, the district court did sit through the hearing. But when you look at the district court's ruling, nowhere does the court layer on any of the kind of in-court demeanor observations that the Rule 52 itself says you have to give kind of even special deference to. So my point being, the district court is free to make these kinds of credibility determinations that are unique to it when it is receiving evidence live. This district court didn't do that. The Ninth Circuit's point, and my point, is that in the Strickland prejudice context, it is error for a district court to say, I think the State's experts are more persuasive than Jones's, therefore I'm going to not consider all of the evidence that came from Jones's experts, and therefore he loses on Strickland prejudice. Well, there's no question that a fact-finder gets special deference when the credibility — when he makes a credibility determination based on demeanor, et cetera, in a hearing before. But even if it's — even if the court says, look, I've looked at the credentials of this person, and I've looked at the credentials of this other person, I've looked at the report, a very poor, short, conclusory report of this one expert, these other reports are much longer, much more detailed, much more impressive, can't say, I'm not going to give any real weight to this one as opposed to the other one, can't do that. And that's subject — that's not subject to clear error review? In this context, no. And actually, even in other contexts, I'm not sure it would be. It would still get kind of careful respect, as Justice Kagan noted, because we do care what, you know, the lower court judges think about issues as they percolate up. That's why courts often remand even pure questions of law back to lower courts to get their input on how should we resolve this. Well, Counsel, how does a district court do this Strickland analysis without finding some facts? It has to do a reasonable probability analysis. I think you've conceded that. Absolutely. Well, okay, well, page 24 of your brief says the state sentencer does that, not the federal district court. So, you know, I'm a little flummoxed by that, I've got to confess, too, as Justice Alito was. But having acknowledged that, that the federal district court has to make a reasonable probability determination, I would think sometimes, at least, a district court could say, putting aside the facts of your case, that I believe this expert rather than that expert, and that informs my reasonable probability analysis. I have to determine what the facts are before I can decide whether a jury would, or in this case a sentencing judge would, there's a reasonable probability, not a 51 percent probability, we all agree, but a reasonable probability that the outcome might have been different. And if one of the experts is patently unbelievable, incredible, just assume that, wouldn't that be a factual finding that could inform a probabilistic analysis? Yes. And, again, that's not our case. I understand that. But in that case, so you agree that's a fact finding that district court can make. Do you also agree that would be reviewable for clear error? Yes. So, again, the kind of 702, Dalbertable, or just pure demeanor in-court observation findings, those are factual findings that go beyond the ones relating to whether the evidence is new, whether it's mitigating, and whether it was available at the time, that a district court is free to make, but our district court did not hear. I understand. But we agree on the legal principle that sometimes a probabilistic analysis is going to depend on what the facts are. Yes. And a district court's best position to do that. Right. And that's reviewable for clear error. Right. But in a case like this, where you have all of this evidence and there wasn't a true credibility determination, that then all of that evidence gets thrown into the reasonable probability analysis on the back end, which, again, the district court has to make that call in the first instance. We're not suggesting any kind of, you know, gag order on district courts when they're conducting these evidentiary hearings and issuing their rulings after them. The question is what deference must the Court of Appeal and this Court give to the district court's observations, gloss on the evidence. So can I even state what I understand you to be saying so that I can make sure that I understand it? In response to Justice Gorsuch, you say that the district court can make these credibility determinations. But the problem, I think, with the I believe this expert, not this one, up front, is that once you then take that mitigating expert's evidence off the table and then do the weighing, you might reach a different result than if you take all the evidence and then in the context of the weighing, you say this mitigating evidence is not going to be given as much weight. That's exactly right. Is that what I'm saying? Because I understood the strickling question to be, that the district court is answering, if the sentencing judge had heard the evidence that the counsel deficiently failed to present, was there a reasonable probability that the outcome would have been different? And so he's assuming that the uncredible expert is going to be presented and sort of folding into his ultimate weighing would the outcome have been different if I had heard from that expert, if the sentencing court had heard from that expert. Whereas in a situation like this one, if he takes that expert out of the picture ahead of time and then makes that analysis, he could reach a different result. Absolutely. That's absolutely correct. Counsel, if Justice Kagan was asking you about whether the Ninth Circuit had considered the aggravating evidence alongside the mitigating evidence and the Ninth Circuit's opinion, I must say I read similarly to Justice Kagan, it didn't really do that. Why wouldn't a vacate and remand be appropriate then? If this court finds that the Ninth Circuit's weighing on pages 58 to 62 of the PET app is insufficient, I think that is the proper recourse to send it back to the Ninth Circuit. I think for the reasons I explained to Justice Kagan, the Ninth Circuit said enough. It acknowledged its obligation. It quoted the actual aggravators. It didn't just point to its site. It quoted them. It didn't shy away from the facts. And it engaged in the comparative analysis that I think Strickland requires by saying, you know, here are all of these cases that are very similar with respect to how brutal the crimes were and with respect to what the mitigation was, and we think relief is warranted. What do you say to your friend's argument on the other side that this case has been lingering for decades and that we've already vacated and remanded this case once and that if we think that the Ninth Circuit didn't engage in the classic Strickland analysis this court requires? Again, I know you disagree, but positing Justice Barrett's point, wouldn't there be some value to everybody to have some finality in this case and just have us do the Strickland weighing in the first instance? I'm not resisting this court doing the weighing. I think that the typical procedure is to send it back to the lower court. But if this court wants to do that, you know, you have the record, you have the law. You could do that re-weighing if you think the Ninth Circuit was insufficient. But it's a question of law, so I don't think the court, without engaging that re-weighing, could issue a judgment. Well, just to be—was there a reasonable probability? And as you say, we have the whole record before us and nothing's changed in 20 years. Right. Why do you think there's a reasonable probability that the sentence would be different given that the sentencing judge, the original sentencing judge, had Dr. Potts' report before it and found mitigators that dealt with the substance abuse with the childhood, with the treatment, the abuse problem. And Dr. Potts' report had found, I think, seven mitigating circumstances that basically were similar to what the trial court ultimately found. Well, of course, the reasonable probability inquiry is not, you know, what would Judge Chavez have done had this evidence been before him in 1993. It's, you know, a non-idiosyncratic reasonable objective sentencer. But I think whoever that person is in this hypothetical, there's a lot more evidence, and Dr. Potts was by no means a defense expert. Dr. Potts noted seven possible mitigators, but even the three that related to psychological and neuropsychological disorders, they are couched expressly in conditional terms. And I'm looking right at page J140. Possibly an affective disorder, the likelihood of a major mental illness, and increased potential for neurologic sequelae. That's in stark contrast to the seven diagnoses that Jones' experts said, this guy actually has. And so I think that changes the calculus right there. And then on top of that, we have... Dr. Potts reported on the likelihood that he suffers from a major mental illness, the head trauma he suffered, which increases the potential for neurologic problems, his intoxication at the time of the offense, his genetic loading for substance abuse, the chaotic and abusive childhood was clearly before the sentencing judge. Novak was the lawyer, the sentencing judge at the post-conviction review proceeding in 2000, said Novak is a very good attorney and did a good job with this difficult trial. That attorney, Novak, testified that Potts, Dr. Potts, really, they didn't do the mitigation expert back at the time the way it's done now, but that Dr. Potts performed a role that really was quite similar to how mitigation experts work in the more modern times, and that Potts was on their team, so to speak, in trying to help them. I think Novak was trying to effectively clear his own name in this context. Again, possibly, likelihood, potential, the three mental... That's a fair point. The sentencing judge is the one who said Novak's a very good attorney who did a very good job in this difficult case. No, that's true. But even if we go back to Dr. Potts, Dr. Potts said when he gave all these conditional hypotheses about what Jones may be suffering from, said, I would like to get more testing, I would like to know more, and then that's exactly what we presented at the federal evidentiary hearing, and then when Dr. Potts was confronted with that, he said, yeah, that's exactly what we needed back then. And so not only do you have, again, actual diagnoses now that are finally coming in in 2006 that the sentencer didn't hear in 1993, you also have additional facts that give rise to those various diagnoses. So you have additional head injuries, and you have a dramatically more significant history and pattern of abuse. I mean, it's one thing for Jones to have been treated very, very poorly up until age 6. It's another thing for Jones to have been abused by not just one stepfather, but two, and a step-grandfather, including sexually, all the way up to age 17. And then what's the re... I understand all that, and I appreciate all that, that it's different and more. I get that. How do we do the reweighing, or how does whatever court does the reweighing, do that reweighing given the horrible aggravators? Well... You know, I don't know. Are we putting ourselves in the perspective of a, I think you said, a non-idiosyncratic sentencing judge in Arizona in 1992, or what are we doing? No, that is what you do. And I guess I want to start out with one point. In all these cases, the question is, you know, are the defendants getting from 0 to 60? And I just want to be clear that it doesn't matter whether one defendant started, let's say, at 10, and then got to 60 miles an hour all at the evidentiary hearing stage in federal court, or with Jones, where there was more mitigation than in Porter, Rompia, Wiggins, and Williams. And so Jones might be starting out at 15 or 20 miles an hour, but they have to get to 60 in order to establish a reasonable probability for relief. And so the way that you would engage in this weighing is, I think, you would look at the four lead cases this Court has decided. Anders v. Texas is also relevant in this space, based on how the Court characterized the evidence there, and then say, okay, that sets the floor. That's the 60-mile-an-hour speed test. Did Jones, with all his mitigation, balancing against the aggravating factors and the facts of the crime, did he get there? And so it really is just a comparative analysis of the good and the bad of this case against this Court's four lead precedents. And I guess I would think it different if the sentencing judge had no awareness of the childhood abuse, no awareness of the head injuries, no awareness of the substance abuse, but the sentencing judge was aware of all that, those basics, and still said, these crimes are too much, and we don't need to go through them. But the sentencing judge was too much. That's why I used the zero to 60 reference, Justice Kavanaugh. It doesn't matter where Jones started, vis-à-vis the other defendants in these cases, because Jones did start out a little bit ahead of them, because there was more mitigation at the aggravation mitigation sentencing hearing before Judge Chavez than there were in Porter, Rumpia, Williams, and Wiggins. But my point is that I think Jones clearly got to 60 miles an hour, and maybe had an easier time getting there, because he did have more to start with. But the question just is, did they get there, and then how bad is the aggravation? Again, brutal crimes here. We acknowledge that. But there's a lot of mitigation when you match it up against the four cases from this Court. It's really hard to see any difference. There's longstanding childhood trauma, a lot of head injuries, and diagnoses by doctors who were not precluded from testifying because they were sneaking in junk signs and not because there were loony tunes under 702. That all goes to the state sentencer to weigh. And because we're not there yet, we're in the federal system, we're asking, is there a reasonable probability that all of that evidence might have persuaded that state sentencer to favor life? Well, you know, just to continue with your analogy, I think the question is, he didn't have to get to 60, right? He needed to get to 120, given the aggravating circumstances that were before the jury. If that's what this Court feels, that's what this Court feels. And I guess this underscores why the analysis of the weight and persuasiveness to be given each piece of evidence is best dealt with on the back end under the prejudice prong. So the district court, again, is going to take all this evidence, and it's going to express its views. The Ninth Circuit is going to look at that. It's not going to have to defer to those views, but it's going to do its own weighing. And it's going to come to this Court, and this Court's going to opine. And if this Court, you know, wants to say, in Porter, Rompillo, Wiggins, Williams, actually, Williams and Porter are the strongest for my side. Yeah, those defendants only had to get to 60. Here, Jones had to get to 120. That's for this Court to do, but to this Court to do without deference to the district court's gloss on the evidence from 13, 14 years ago. Thank you, counsel. Thank you, Justice Thomas. Justice Alito. We're losing, I think, a view of what this case is about. Nobody disputes that trial counsel is deficient. Correct. In no capital case should any lawyer wait until someone's been found guilty to start mitigation because it doesn't give you enough time to do a thorough investigation, correct? Correct. All right. And there's no doubt that there was a mountain of additional evidence that the new experts found with a proper investigation. But we're not here to undo the conviction, correct? Correct. The conviction is not in dispute. It's not even — All right. We're only here to decide who should decide whether to resentence him. And you said that's how the Court feels, but why is it our feeling? Shouldn't it be the trial court's feeling? An Arizona State judge should look at this. Isn't that what you want? An Arizona State court judge to look at this and say the aggravators outweigh the mitigators? The other way around, Justice Sotomayor. All right. But — No, you want them to say, but — Yes. The point is that what we're asking for here is for the trial court to determine that weight. Absolutely. Absolutely. And I guess I want to be clear that the rule we're — So it really is should the Arizona court consider that evidence now? Right. Was there enough mitigating evidence in total when weighed against the bad such that an Arizona court, when looking at this anew, might reach the opposite result? And I guess one thing I do want to underscore really quickly is that, you know, our rule would cut both ways. If there was a district judge in Judge Bolton's situation who made, and I counted, 13 — you should never use the word preponderance to your point earlier, Justice Alito, but a lot of synonyms for preponderance. You had a district judge who made 13 findings favorable to the defense and the State were to appeal. Our rule would help the State out there and say, nope, you know, the district court can do certain things factually, but generally speaking, when the court is evaluating which side's evidence is more persuasive, is there a diagnosis or not, that all gets dealt with on the back end under Strickland prejudice, and that at least is subject to de novo review on appeal. Justice Kagan? Justice Gorsuch? Justice Jackson? Thank you, counsel. Rebuttal, Mr. Lewis? Thank you, Mr. Chief Justice. Even putting aside the particular questions about the scope and where the line is drawn and the factual question, on Strickland reweighing alone, this Court's action is compelled. The seven aggravating circumstances found here are among the most weighty aggravating circumstances under Arizona law. And, you know, this was footnoted in the brief and I wanted to scream it in the brief. The district or the circuit court barely mentioned the fourth aggravating circumstance as to Tisha Weaver, the seven-year-old girl who Jones brutally murdered. That bare mention tells me and tells any reader that it did not factor into their determination. When you look at those aggravating circumstances and you understand how Arizona courts treat those aggravating circumstances, this is, as we argue in our brief, almost a foregone conclusion that there is no reasonable probability that the sentence would have been different. And I would submit, even if you take every single scrap of Jones' evidence submitted in district court as true, the brutality inflicted upon the victims here, and let's include Catherine Gimena, the grandmother who died, but died too late because she was in a coma for months until she died right before trial started. This is far different from those court cases that my friend relies on. There are more victims, the aggravation is more severe, and the difference in mitigation is less because as you all have recognized, Jones had a pretty good mitigation case before the trial court. The trial court found that he suffered from long-term substance abuse, that genetic factors and head injuries contributed to that substance abuse, that he was under the influence of drugs and alcohol at the time of the crimes, which is especially compelling in Arizona as far as mitigation evidence goes  and that Jones had a chaotic and abusive childhood. And it may have left out some details, I don't know, but anything else that was added was cumulative and pales in comparison to the aggravation present here. Thank you. Thank you, Counsel. The case is submitted.